IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

CARL LAKE                      :        CIVIL ACTION
                               :
        v.                     :
                               :
TRINITY SERVICE GROUP, INC.    :
d/b/a ESS SUPPORT SERVICES     :
WORLDWIDE and COMPASS GROUP,   :
USA, INC.                      :        NO. 05-158


                          MEMORANDUM


Bartle, C.J.                              November 4, 2008

        Plaintiff Carl Lake has filed this diversity action

against his former employer, defendants Trinity Service Group,

Inc. d/b/a ESS Support Services Worldwide ("ESS") and Compass

Group, USA, Inc. ("Compass Group")[1], for damages arising out of

problems related to his collection of workers' compensation

benefits following an accident in which a portion of his left

index finger was severed.  Before the court is defendants' motion

for summary judgment on all six counts of plaintiff's complaint.

        A moving party is entitled to summary judgment only

where there is no genuine issue of material fact.  Fed. R. Civ.

P. 56; V.I. Loc. R. Civ. P. 56.1; Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  A fact is material if it could "affect the

outcome of the suit under governing law."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is

_____

1.  The relationship between ESS and Compass Group is not clear.
The complaint states:  "Compass Group, Inc. controls and or
ratifies the employment decisions of ESS."  Compl. at 1.

genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "[A] party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002). In reaching its decision, a court must view all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

I.

The facts, as stated in Lake's affidavit and taken as true for the purposes of this motion, are as follows.  Defendants hired Lake as a kitchen helper in January, 2005.  On March 17, 2005, Lake's supervisor, Ken Majors, asked him to fill in for an absent employee in the warehouse.  When he arrived at the warehouse, another employee climbed onto a forklift and was trying to operate it when the pallet jack fell off.  It hit Lake on the head and face.  When he lifted his hand to shield himself, it severed the tip of his left index finger.  In shock, Lake quickly picked up his finger and rushed back to the kitchen for ice and a bandage.  Majors took Lake to the on-site medical center and Lake was subsequently taken by ambulance to an emergency room.  Early the next morning, Friday, March 18, Lake's

-2-

finger was surgically reattached.  Upon discharge on Friday afternoon, the surgeon told Lake that he would most likely be unable to work for at least two weeks, that is, until Friday, April 1, and that he must follow up with a doctor before returning to work.

While he was still in the hospital, one of Lake's supervisors, Lawrence Stewart, called him and demanded he return to work immediately to explain to the "safety man" what had happened.  After leaving the hospital, Lake went to see Stewart and Majors.  He told them he was in great pain, but they insisted that he speak with a safety person regarding the incident.  When Lake told his supervisors he expected to be out for at least one to two weeks, they "appeared annoyed about the fact that [he] was injured and had to be out" but eventually said that they would have light work for him to do.

Between March 19 and March 28 Lake was still out of work and purportedly made several calls to his supervisors to keep them updated on his recovery.  At some point during that period he was told to report to work on Monday, March 28.  Lake complied even though he was still bleeding through his bandages. When he arrived, Lake was assigned to hang some posters.  When he finished, Majors called him to his office and told him there was no other light work for him to do.  According to Lake, Majors also said that what Lake did "was stupid" and that he was terminating him "for what he did" and for his "stupid injury." He asked Lake to hand in his employee badge.  When Lake asked

-3-

whether he would get paid for the day, Majors replied that workers' compensation would deal with it.

Lake attempted to file a workers' compensation claim "on or before April 6, 2005," at which point he learned that defendants had not filed any paperwork regarding his injury. Lake was unable to gain access to Stewart to arrange to have his workers' compensation forms completed. Ultimately workers' compensation assisted Lake in getting an appointment on April 6. Stewart completed the forms and Lake filed them that day.

On or about April 8, 2005, Lake went to see the surgeon who had operated on him. He gave Lake a disability certificate placing him on total temporary disability from March 18, 2005 to June 18, 2005. Lake paid for this visit out of pocket. Upon contacting workers' compensation for payment of his medical bills, Lake was told that his employer still had not submitted all of the necessary paperwork. Lake did not receive a disability check until July, 2005, and he was never paid by his employer for his time at work on March 28. Following further medical treatment and a second surgery, the Workers' Compensation Administrator informed Lake some time after March 22, 2006 that he was cleared to return to work as of January 27, 2006.

Defendants describe a different sequence of events from the one outlined above. According to Stewart's affidavit, Lake was restricted from working only until March 24, 2005 and Lake's doctor cleared him to return to work on March 25, 2005. He agrees that defendants instructed Lake to report to work on

March 28 but states that Lake never appeared that day or the next and that he never notified a supervisor of his intended absences. ESS policy is to treat an employee who fails to show up to work or to contact his supervisor for two consecutive days as having abandoned his job.  According to Stewart, ESS therefore terminated Lake on March 30, 2005.

II.

Defendants have moved for summary judgment on all six counts of Lake's complaint.  Lake first alleges, in Count One of his complaint, that defendants negligently injured him.  He later clarifies in his brief in opposition to defendants' motion for summary judgment that his claim of negligence is not for the physical injury he sustained to his finger but for defendants' negligence in failing to file his workers' compensation claim and misrepresenting to him that it had in fact been filed.

The Workers' Compensation Act is designed to address bodily injuries, disabilities, and death arising out of the course of an employee's employment.  See V.I. Code Ann. tit. 24, § 252.  With limited exceptions, the Act provides the exclusive remedy for employees injured on the job.  V.I. Code Ann. tit. 24, § 284.  However, intentional acts of an employer or fellow employee are outside the workers' compensation scheme, and a worker may sue in the tort system when injured as a result.  Gass v. V.I. Tel. Corp., 149 F. Supp. 2d 205, 211 (D.V.I. 2001) rev'd in part on other grounds, 311 F.3d 237 (3d Cir. 2002).

-5-

Lake's negligence claim is not for personal injuries, but rather for the improper handling of his workers' compensation claim.  Lake argues that such a claim is not within the purview of the workers' compensation system.  Lake's counsel took a nearly identical position in Herman v. HOVENSA, LLC & Jacobs/IMC, LLC, No. SX-00-CV-184, 2007 WL 2903461, at *2 (V.I. Super. 2007). In that case the Superior Court of the Virgin Islands held that there is no cause of action under Virgin Islands workers' compensation law or otherwise for an employer's failure under V.I. Code Ann. tit. 24, § 257(b) to report a workplace injury to the Workers' Compensation Administration.[2]  Id. at *2-3.  The court considered three factors in reaching its conclusion that no cause of action exists under Virgin Islands law:

> (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether there is some indication of legislative intent, explicit or implicit, [that] suggests a legislative intent to create a private remedy; and (3) whether implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme.

---

2.  Section 257(b) states:

> [w]ithin eight days after the receipt of the written notice of injury referred to in subsection (a) hereof, the employer shall complete an employer's report of injury and forward same together with the employee's notice of injury to the Administrator by personal delivery or by mail. The failure of the employer to file such reports within such period shall not prejudice the claim of the employee.

V.I. Code Ann. tit. 24, § 257(b).

-6-

Id. at *3.  Of these factors, the second is the most important.
Id.

The purpose of the workers' compensation statute is "to relieve employers and employees of the burden of civil litigation without impairing the purpose of providing prompt payment to injured employees without regard to fault."  Figueroa v. Hess Oil V.I. Corp. (HOVIC), 198 F. Supp. 2d 632, 655 (D.V.I. 2002); see V.I. Code Ann. tit. 24, § 250.  In examining the legislative intent of the workers' compensation scheme, the court in Herman reasoned:

> Title 24 V.I.C. Chapter 11 appears comprehensive in its efforts to regulate the manner in which compensation is provided for work-related injuries, and nowhere does it mention a private right of action against an employer for failing to report an accident or to file an Employer's First Report ....  [I]mplying a remedy for the plaintiff would not be consistent with the underlying purposes of the legislative scheme ....  Thus, a private right of action would grant a remedy where the statute provides that there are to be no damages.

Herman, 2007 WL 2903461, at *2.

In this diversity action we are bound to apply the substantive law of the Virgin Islands.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Herman is therefore

controlling.³  We will therefore grant defendants' motion for
summary judgment on Count One.

In Count Two Lake claims damages based on defendants'
alleged violations of two sections of the Workers' Compensation
Act.  First, Lake avers ESS violated § 286 of the Act by failing
to report his injuries in a timely manner and failing to
cooperate in the filing of necessary documents so that he could
obtain his benefits.  Under § 286,

> [w]ithin 48 hours after notice is received,
> or should have been received by the employer
> of an accident resulting in personal injury,
> which shall cause a loss of time from regular
> duties beyond the working day or shift on
> which the accident occurred, or which shall
> require medical attention beyond ordinary
> first aid or more than two treatments by a
> physician or person rendering first aid, a
> report thereof shall be made in writing by
> the employer to the administrator of the
> Workers' Compensation Administration.

V.I. Code Ann. tit. 24, § 286.  Lake states "there [are] no
reported Virgin Islands' cases expressly addressing application
of [§ 286]."  Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at
9.  While we have found no case discussing § 286, the Virgin
Islands Superior Court, as already discussed above, held in

---

3.  Counsel's failure to cite to Herman is in direct
contravention of Model Rule of Professional Conduct 3.1
prohibiting the filing of frivolous claims, and Rule 3.3(a)(2)
for "fail[ure] to disclose to the tribunal legal authority in the
controlling jurisdiction known to the lawyer to be directly
adverse to the position of the client and not disclosed by
opposing counsel."  Apparently unsure of the nature of Lake's
negligence claim, counsel for defendants did not cite to or
discuss Herman until they filed their reply in support of motion
for summary judgment following plaintiff's clarification of the
claim in his memorandum in opposition to defendant's motion for
summary judgment.

<u>Herman</u> that there is no private cause of action for an employer's failure to file timely an injury report under § 257(b).  We find the reasoning in <u>Herman</u> persuasive and similarly hold that there is no private cause of action for an employer's failure to file timely an injury report under § 286.

Second, Lake seeks redress for defendants' failure to rehire him in violation of § 285 of the Workers' Compensation Act.  Under that section,

> (a)  An employer shall rehire any employee who -
>
> (1)  has been disabled and thereby unable to continue his employment, as certified under this chapter, and
>
> (2)  immediately after the termination of the disability, applies to the employer for reemployment in the position which he held, at the time of the injury, or in a substantially equivalent position, unless the employer satisfies the Administrator either that the employee, as a result of the injury, will be unable to resume in full his previous obligations and duties, or that the employer had terminated the employment after the accident for just cause. No employee rehired under this section may be subsequently dismissed without just cause.
>
> (b)  The Administrator shall enforce the provisions of this section by order after hearing.

V.I. Code Ann. tit. 24, § 285.  Lake argues that defendants violated § 285 when they terminated him upon learning that he would need to take time off to recover from his injury.

Virgin Islands courts have not determined whether a private cause of action exists against an employer for failure to comply with § 285(a).  In our view, the statutory designation of

-9-

the Administrator to enforce § 285 is evidence of a clear legislative intent to provide an <u>administrative</u> remedy only for violations of that section.[4]  As in <u>Herman</u>, we conclude there is no private cause of action for wrongful discharge under the Workers' Compensation Act.  To hold otherwise would be inconsistent with the legislative scheme.  We will therefore grant defendants' motion for summary judgment on Count Two.

Our decision with respect to Count Two does not end our analysis of Lake's wrongful discharge claim in Count Three.  In this count, Lake alleges that defendants acted in violation of the Wrongful Discharge Act when they terminated him.  Under that Act, employers may fire at-will employees for certain enumerated reasons, including continuous absences, but any other reason for discharge is prohibited.  V.I. Code Ann. tit. 24, § 76.  This court has determined that a cause of action exists in the Virgin Islands for retaliatory discharge of an at-will employee for the filing of a workers' compensation claim.  <u>Aristide v. United Dominion Constructors, Inc.</u>, No. 1993-194, 1994 WL 371406, at *3 (D.V.I. Jun. 28, 1994).

Lake has likewise stated a claim under the Wrongful Discharge Act.  He provides evidence of several different reasons as to why he was fired including his injury, his seeking medical treatment, his continuing on disability longer than expected, and

---

4.  It is unclear from the record whether Lake attempted to pursue an administrative remedy.  He states only, "Plaintiff is without information as to why the Workers' Compensation Administration did not hold a just cause hearing."  Pl.'s Mot. and Statement of Facts in Opp'n to Def.'s Mot. for Summ. J. at 4.

retaliation for his expected filing of a workers' compensation claim.  Defendants maintain that they fired Lake for a legitimate reason; that is, because of his failure to return to work on March 28 and March 29.  <u>See</u> V.I. Code Ann. tit. 24, § 76(6).  Lake avows that he reported to work on March 28 and was fired at that time.  Genuine issues of material fact exist as to why Lake was terminated and whether his termination was permitted under the Wrongful Discharge Act.  Accordingly, we will deny defendants' motion for summary judgment on Count Three.

Count Four asserts that ESS breached its duty of good faith and fair dealing to Lake.  To state such a claim, a plaintiff "must allege acts amounting to fraud or deceit on the part of the employer."  <u>Lue-Martin v. March Group, et al.</u>, No. 03-0105, 2008 WL 2966406, at *12 (D.V.I. Jul. 30, 2008).  Such a duty is limited to situations where a contractual relationship exists between the parties.  <u>Benjamin v. Thomas Howell Group</u>, No. Civ. 1996-071, 2002 WL 31573004, at *2 (D.V.I. Apr. 22, 2002).

In response to defendants' motion for summary judgment, Lake simply states that he "has alleged a contractual relationship between the Employer and Lake, and that, in ways separate from the workers' compensation scheme, the Employer breached its implied duty of good faith and fair dealing."  Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 17.  He offers no facts in his affidavit or otherwise in support of this claim.  Therefore, we will grant defendants' motion for summary judgment on this count.  <u>See</u> <u>Lue-Martin</u>, 2008 WL 2966406, at *12-13.

In Count Five Lake alleges intentional infliction of emotional distress, or in the alternative, negligent infliction of emotional distress.  Both of these claims relate to ESS's filing of Lake's workers' compensation claim and are not for harm Lake suffered as a result of his injured finger.

Claims for intentional infliction of emotional distress are outside of the workers' compensation exclusivity scheme. <u>Eddy v. V.I. Water & Power Auth.</u>, 955 F. Supp. 468, 478 (D.V.I. 1997).  A claim for intentional infliction of emotional distress requires a showing of extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress. <u>Id.</u> (quoting Restatement (Second) of Torts, § 46); <u>see also</u> V.I. Code Ann. tit. 1, § 1/4.  Even if we take as true the facts Lake has alleged, he cannot withstand summary judgment.  He has shown no extreme or outrageous conduct.

To succeed on a claim for negligent infliction of emotional distress in the Virgin Islands a plaintiff must prove physical harm and foreseeability.  <u>Nicholas v. Wyndham Int'l, Inc.</u>, No. 2001-147, 2007 WL 4201032, at *7 (D.V.I. Nov. 13, 2007).  Whether or not Lake's negligent infliction of emotional distress claim falls outside of the workers' compensation scheme, he has not suffered any physical injury as a result of defendants' alleged negligent reporting of his accident to the Workers' Compensation Administrator.  Consequently, we will grant defendants' motion for summary judgment on Count Five.

-12-

Finally, in Count Six Lake seeks an award of punitive damages.  "In the Virgin Islands to get to a jury on the issue of punitive damages, the plaintiff is required to show that the acts complained of were outrageous, done with evil motive or reckless indifference to his rights."  Justin v. Guardian Ins. Co., Inc., 670 F. Supp. 614, 617 (D.V.I. 1987).  Lake states in his complaint, "The actions of the Defendant are so reprehensible, so illegal and done with such an evil motive as to entitle the Plaintiff to an award of punitive damages," but he has provided no proof in support of this count.  He did not even respond to defendants' motion for summary judgment in this regard.  Lake cannot proceed to a jury on the issue of punitive damages, and we will grant defendants' motion for summary judgment on Count Six.

Accordingly, and for the reasons stated above, we will grant in part and deny in part defendants' motion for summary judgment.  The motion will be granted with respect to all of plaintiff's claims except for Count Three for violations of the Wrongful Discharge Act, V.I. Code Ann. tit. 24, § 76.